In re Woodman H. MINER, Sr., Debtor.

Woodman H. MINER, Sr. and Doug E. Gilmore, Appellants,

v.

BAY BANK & TRUST COMPANY, Appellee.

No. 94–50391–RV.

United States District Court, N.D. Florida, Panama City Division.

June 30, 1995.

David L. Fleming, David L. Fleming P.A., Gulf Breeze, FL, for Woodman H. Miner, Sr., and Doug E. Gilmore.

Jack G. Williams, Jack G. Williams, P.A., Panama City, FL, for Bay Bank & Trust Co.

## ORDER

VINSON, District Judge.

Appellants Woodman H. Miner, Sr. and Doug E. Gilmore have appealed from a decision of the Bankruptcy Unit of this Court which granted appellee Bay Bank & Trust Company's motion to dismiss the appellants'

amended complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the decision of the Bankruptcy Judge is AFFIRMED.

## FACTUAL BACKGROUND

While the record on appeal is somewhat sparse, the following facts may be gleaned from the record. Appellant Woodman H. Miner, Sr. ("Miner") was the sole stockholder of The Miner Corporation of Bay County, Inc. ("Miner Corp."). Miner Corp. owned certain real and personal property in Panama City Beach, Florida, on which it operated a restaurant. Miner Corp.'s property was subject to a mortgage in favor of Miner, individually. On or about August 10, 1988, appellant Bay Bank and Trust Company ("Bay Bank") extended a loan to Miner Corp. As security for the loan, Bay Bank held a mortgage on the restaurant's real property and equipment. As additional security for the debt, Miner assigned his mortgage on the property to Bay Bank. Bay Bank properly recorded the assignment of the mortgage in the public records. Also, appellants Miner and Gilmore personally guaranteed Miner Corp.'s debt to Bay Bank. On October 11, 1991, Miner Corp. was dissolved.[1] The record on appeal does not reveal whether the restaurant had discontinued operations at the time the corporation was dissolved.

On March 26, 1992, appellant Doug E. Gilmore executed a promissory note for $45,590.92 in favor of Bay Bank. Apparently, the proceeds of the note were used to pay the overdue accrued interest on the loan from Bay Bank. Gilmore also executed a document acknowledging that his guarantee of the debt was legally binding, and that legal proceedings were pending against Miner Corp. which was in default on its loan. Gilmore also acknowledged that his execution of the promissory note did not relieve him of his obligations as guarantor, or in any way affect the pending lawsuit against Miner Corp.

On July 23, 1992, a Final Judgment in Foreclosure and on Guarantee was entered in the Circuit Court in and for Bay County, Florida [*Bay Bank and Trust Co. v. The Miner Corp. of Bay County, a dissolved corporation, by and through its surviving officer W.H. Miner, Sr.; Woodman H. Miner, Sr.; Douglas E. Gilmore; et al.* Case Number 91–2563(B) ]. The final judgment declared that Bay Bank was owed a total of $420,358.32 in principal, interest, and attorneys' fees; and that the appellee held valid guarantees from each of the appellants, individually, for the total amount owing. The judgment ordered that the property on which Bay Bank held a lien, specifically three parcels of real estate and the restaurant's fixtures and equipment, including its Florida alcoholic beverage license, be sold at a public sale. Pursuant to the judgement, on September 3, 1992, the property was sold at a foreclosure sale.

On July 1, 1993, Miner filed a voluntary Chapter 11 petition in the Bankruptcy Unit of this court [*In re Woodman H. Miner, Sr.*, Case No. 93–02205], and was appointed as debtor-in-possession of the bankruptcy estate. Miner Corp. was not a party to the bankruptcy petition. On June 9, 1994, Miner filed a two-count complaint against appellee Bay Bank & Trust Company ("Bay Bank") in the bankruptcy action [*Woodman H. Miner, Sr. v. Bay Bank and Trust Co.*, Case Number 94–90041].[2] On July 1, 1994, Bay Bank moved to dismiss the complaint. On August 3, 1994, Bankruptcy Judge Lewis M. Killian entered an order dismissing the complaint, but granting leave to file an amended complaint within 20 days.

On August 26, 1994, an amended two-count complaint was filed. The amended complaint named both of the appellants as plaintiffs. Count I alleged that the sale of the realty and personalty was a fraudulent transfer

---

1. Although the record is unclear, it appears from the Florida Secretary of State's "corporate printout" (doc. 12) that Miner Corp. was administratively dissolved.

2. Two different case numbers are utilized intermittently throughout the record on appeal for the adversary proceeding, 94–90041 and 94–70041. Case number 94–90041 appears to be the number assigned by the bankruptcy court, and is presumably correct. However, the majority of the pleadings in the record have case number 94–70041.

pursuant to Title 11, United States Code, Section 548. Paragraph (7) further alleged that, "[t]here was collusion between the defendant and another party in said foreclosure with regard to the conduct of the sale of the real estate, so that said sale is not conclusive as to fair value." Count I also alleged that the foreclosure sale had the effect of perfecting the assignment of the mortgage held by Miner, and thus, was a transfer of the debtor's property. Count II sought cancellation of the promissory note executed by Gilmore. Although the language is not entirely clear, paragraph (13) in Count II of the amended complaint seems to allege a failure of consideration, as well as fraud in the inducement, with regard to the promissory note.

On September 7, 1994, the appellee moved to dismiss the amended complaint for failure to state a cause of action upon which relief may be granted. On November 3, 1994, Judge Killian entered a two-paragraph ordering dismissing the amended complaint without making any written findings. On November 15, 1994, the appellants filed a "motion for rehearing." The motion for rehearing sought reconsideration of Judge Killian's order dismissing Count I of the amended complaint, and leave to file a second amended complaint. The motion for rehearing explicitly stated that it did not seek reconsideration of the dismissal of Count II. (doc. 15, p. 2).

On November 30, 1994, 177 B.R. 104, the Bankruptcy Judge entered a written order denying the motion for rehearing. Appellants timely filed a notice of appeal.

## STANDARD OF REVIEW

■ A district court reviewing the decision of its Bankruptcy Unit functions as an appellate court. *In re Sublett,* 895 F.2d 1381, 1383 (11th Cir.1990). The factual determinations of the bankruptcy court are reviewed under the clearly erroneous standard; determinations of law are reviewed de novo. *In re Monetary Group,* 2 F.3d 1098, 1103 (11th Cir.1993). The standard for review for an appeal of an order on a motion to dismiss is the same as it was for the trial court [*Stephens v. Dept. of Health and Human Services,* 901 F.2d 1571, 1573 (11th Cir.

1990) ]: the court must accept all the alleged facts as true and find all inferences from those facts in the light most favorable to the plaintiff. *See, e.g., Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir.1994); *Delong Equipment Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir.1988). Nevertheless, Rule 12(b)(6) authorizes dismissal of a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

## DISCUSSION

■ Count I seeks to avoid the sale of Miner Corp.'s property at the foreclosure sale, pursuant to Title 11, United States Code, Section 548(a)(2), which permits a trustee or debtor-in-possession to recover so-called constructive fraudulent transfers. To succeed on a Section 548(a)(2) claim, the trustee must establish (1) that the debtor had an interest in the property, (2) that a transfer of that interest occurred within one year of the filing of the bankruptcy estate, (3) that the debtor was insolvent at the time of the transfer, or became insolvent as a result thereof, and (4) that the debtor received less than reasonably equivalent value for the interest transferred. *BFP v. Resolution Trust Corp.,* 511 U.S. ——, ——, 114 S.Ct. 1757, 1760–61, 128 L.Ed.2d 556, 563 (1994). In this appeal, the second and third elements are not at issue.

An essential element in a fraudulent transfer action is that the debtor have had an interest in the property transferred. A fraudulent transfer may not be avoided under Section 548(a) if the debtor had no interest in the property transferred. *Estes v. N & D Properties, Inc. (In re N & D Properties, Inc.),* 799 F.2d 726, 733 (11th Cir.1986). The property sold at the foreclosure sale was owned by the corporation, not by the debtor. The Bankruptcy Judge held, therefore, that no property of the debtor was transferred, and Section 548(a) was inapplicable. The appellants contend that this was error, urging that the term "property of the debtor" be read liberally to include property of a corporation controlled by the debtor in order "to

effectuate the purpose of the Bankruptcy Code."

■ What constitutes "property" and an "interest in property," terms not defined in the Bankruptcy Code, are determined by state law. *Barnhill v. Johnson,* 503 U.S. 393, 397–98, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39, 46 (1992); *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 141 (1979).

■ The law of Florida is that corporations, even closely held corporations, are distinct legal entities from their stockholders. "[C]orporations are legal entities separate and distinct from the persons compromising them." *111 Properties v. Lassiter,* 605 So.2d 123, 126 (Fla. 4th DCA 1992) (quoting *American States Ins. Co. v. Kelley,* 446 So.2d 1085, 1086 (Fla. 4th DCA), *rev. denied,* 456 So.2d 1181 (Fla.1984)). Under Florida law, the stockholders do not hold title to property owned by the corporation. Rather, the corporation, as a legal entity, holds the title. The appellants have not disputed this general principle. However, appellants contend that because Miner Corp. was a dissolved corporation, the result should be different, at least in the bankruptcy context. Appellants argue that for bankruptcy purposes, when Miner Corp. was dissolved, title to Miner Corp.'s property vested in Miner as the sole stockholder of the corporation.

The appellants rely upon another decision of the Bankruptcy Unit of this court: *Hall v. Quigley (In re Hall),* 131 B.R. 213 (Bankr. N.D.Fla.1991). There, the debtor was a stockholder in a dissolved corporation, and sought to bring an action to recover property of the corporation which had been transferred. Former Section 607.310, Florida Statutes, now repealed, provided that the directors of a dissolved corporation at the time of dissolution became the trustees of the corporate property, with the shareholders as beneficiaries of that trust. Because the debtor was a beneficiary of this equitable trust, Judge Killian held that debtor had an interest in the property, and therefore, the debtor had standing to bring an action to recover corporate property which had been transferred. Appellants urge that I apply *Hall v. Quigley* and find that Miner, not the Miner Corp., owned the property sold at the foreclosure sale.

As the Bankruptcy Judge noted in his written order denying the motion for rehearing, Section 607.310 was repealed, effective July 1, 1990, and replaced by Section 607.1405. The new statute provides in pertinent part:

607.1405. Effect of dissolution

(1) A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs ...

\*    \*    \*    \*    \*    \*

(2) Dissolution of a corporation does not:

(a) Transfer title to the corporation's property;

■ Under the plain language of Section 607.1405, equitable title to a dissolved corporation's property no longer passes to the corporate directors at the time of the dissolution. Judge Killian held that this statutory change in Florida law had negated the basis of his decision in *Hall v. Quigley,* and that *Hall* was no longer the law of Florida. He found that under Section 607.1405, title to the property of Miner Corp. remained in the corporation, even after the corporation was dissolved, and therefore, the debtor had no interest in the property transferred.

■ "It is axiomatic that the interpretation of a statute must begin, and usually ends, with the text of the statute." *Boca Ciega Hotel, Inc. v. Bouchard Transportation Co.,* 51 F.3d 235, 237 (11th Cir.1995). It is difficult to conceive of a more unambiguous wording than that contained in Section 607.1405(2)(a). The statute plainly states that the dissolution of a corporation does not transfer title. "The controlling principle in this case is the basic and unexceptional rule that courts must give effect to the clear meaning of the statute as written." *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 476, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379, 388 (1992). The Bankruptcy Judge correctly applied the plain language of the statute, and held that Miner had no interest in the property sold at the foreclosure sale.

The appellants contend that, since Miner controlled the Miner Corp., he actually controlled the property, and that applying the statute as written in the bankruptcy context is inequitable and fails to promote which the appellants conceive to be "the ends of justice." Even if true, that is an argument that must be addressed to the legislature. In short, the appellants' suggested interpretation is contrary to the plain language of the statute, and that "is the end of the matter." *Brown v. Gardner*, 513 U.S. ——, ——, 115 S.Ct. 552, 556, 130 L.Ed.2d 462, 468 (1994).

The appellants also contend that the foreclosure sale was a transfer of the debtor's property because the foreclosure judgment and sale had the effect of perfecting the assignment of the Miner's mortgage to Bay Bank. Section 548(d)(1) defines the time that a transfer is made:

> For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor ... cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee ...

■ The rights of a secured creditor are determined according to the applicable non-bankruptcy law of the state from which the debts arise. *Butner v. United States*, 440 U.S. 48, 55–57, 99 S.Ct. 914, 918–19, 59 L.Ed.2d 136, 141–43 (1979). Under Florida law, an assignment of a mortgage on real property becomes effective against subsequent purchasers for value upon recordation. § 701.02(1), *Fla.Stat.* (1993). It is undisputed that Miner's assignment of his mortgage to Bay Bank was properly recorded more than one year prior to the filing of the petition. That recordation, not the foreclosure sale, perfected the assignment of the mortgage.

The appellants' claim also fails the fourth prong of a Section 548(a) claim—that the debtor received less than a reasonably equivalent value in exchange for the transfer. Resolving a split in the circuits, the Supreme Court of the United States held that " 'a reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the require-ments of the foreclosure law have been complied with." *BFP v. Resolution Trust Corp.*, 511 U.S. ——, ——, 114 S.Ct. 1757, 1758, 128 L.Ed.2d 556, 569 (1994). On the basis of this decision, the Bankruptcy Judge dismissed the original complaint.

■ Appellants rely on language in the *BFP v. Resolution Trust Corp.* opinion that a "noncollusive" real estate foreclosure sale satisfies the Bankruptcy Code's requirement of a reasonably equivalent value for the property transferred. 511 U.S. at ——, 114 S.Ct. at 1759, 128 L.Ed.2d at 561. Appellants contend that by necessary implication, a collusive foreclosure sale is not conclusive as to reasonably equivalent value. In paragraph (7) of their amended complaint, the plaintiffs added a sentence alleging collusion. "There was collusion between the defendant and another party in said foreclosure with regard to the conduct of the sale of the real estate, so that said sale is not conclusive as to fair value."

■ It appears that a foreclosure sale properly conducted in accordance with the requirements of state law is, by definition, "noncollusive." 511 U.S. at ——, 114 S.Ct. at 1765, 128 L.Ed.2d at 569. Nevertheless, Rule 9 of the Federal Rules of Civil Procedure applies in an adversary bankruptcy proceeding. Rule 7009, Fed.R.Bank.P. Rule 9(b) requires that the circumstances constituting fraud must be pled with particularity. The bald statement of the amended complaint that "there was collusion between the defendant and another party" certainly does not state the circumstances of the alleged fraud with particularity. Appellants have failed to adequately plead a lack of receipt of reasonably equivalent value for the property transferred.

The Bankruptcy Judge's dismissal of Count I of the amended complaint is AFFIRMED. Because the debtor had no interest in the property transferred and could not state a Section 548(a) claim as a matter of law, the Bankruptcy Judge was entirely correct in denying the appellants leave to file a second amended complaint. That decision is also AFFIRMED.

■ Finally, appellants assert that the Bankruptcy Judge erred in dismissing Count II. The appellate record is devoid of any indication as to the basis of Judge Killian's decision to dismiss Count II. This otherwise inexplicable situation is readily explained by the appellants' conduct. As noted above, the Bankruptcy Judge originally dismissed the case without making any written findings. In its motion for rehearing, the appellants stated:

> The court, in effect, abstained by dismissal of Count II, and the plaintiff [sic] will not request reconsideration in that regard, choosing instead to further pursue the matter in state court.

Doc. 15, p. 2. Quite logically, since the appellants expressly stated in their motion for rehearing that they were not seeking a modification of the Bankruptcy Judge's decision with regard to Count II, he did not address the subject in his written order.

The appellants' and the appellee's briefs each indicate that the Bankruptcy Judge stated that he "would prefer" to have Count II decided in state court. This is not included in the record on appeal, perhaps because Judge Killian made this statement at the hearing on the motion for rehearing. There is no transcript of that hearing in the record. The appellants assert that this alleged statement by the Bankruptcy Judge indicates that he dismissed Count II because he did not believe the Bankruptcy Court had jurisdiction over the claim. The appellee contends that it indicates that Judge Killian choose to abstain from hearing the matter.

Any purported statement of the Bankruptcy Judge that he "preferred" to have the matter heard in state court would certainly seem to indicate that the he chose to abstain from hearing the claim. The appellants seem to consider this to be a discretionary abstention, pursuant to Title 28, United States Code, Section 1334(c)(1). However, it is not before me on appeal, since the appellants stated in their motion that they were not seeking reconsideration of the dismissal of Count II, they are estopped from changing their position on this issue for the first time on appeal.

## CONCLUSION

The decision appealed from is AFFIRMED in all respects.

DONE AND ORDERED.