In re Tony E. BARFIELD, Debtor.

Tony E. Barfield, Plaintiff,

v.

Sana of Jacksonville, Inc., Defendant.

**Bankruptcy No. 01–2210–3F3.
Adversary No. 01–96.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 30, 2001.

Lester Makofka, Jacksonville, FL, for plaintiff.

S. Hunter Malin, Jacksonville, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court on the Emergency Motion for Return of Debtor's Property ("Motion for Return of Property") filed by Tony E. Barfield ("Plaintiff") on March 26, 2001. (Doc. 2.) Sana of Jacksonville, Inc. ("Defendant") filed a Response to the Motion for Return of Property on March 27, 2001. (Doc. 5.) On April 11, 2001, the Court held an expedited evidentiary hearing on the Motion for Return of Property and took the matter under advisement. Upon review of the evidence presented and upon review of the arguments and submissions of counsel, the Court finds it appropriate to deny Plaintiff's Motion for Return of Property.

### FINDINGS OF FACT

On December 22, 1998, Plaintiff submitted the Articles of Incorporation for Toxic Tony's, Inc. ("Toxic Tony's") to the Department of State of the State of Florida. Plaintiff was the sole shareholder and director of Toxic Tony's.

On December 22, 1998 Toxic Tony's entered into an Asset Purchase and Sale Agreement with Three Amigos of Jacksonville, Inc. ("Three Amigos") for the purchase of the equipment, inventory, receivables, and miscellaneous assets of a bar and restaurant doing business as the Double Play Bar and Grille ("the Double Play"), located at 7900 103rd St., Suites 8 and 9, Jacksonville, Florida. (Pl.'s Ex. 3.) Three Amigos leased the Double Play location from Defendant.

Along with the assets of the Double Play, Toxic Tony's also purchased the trade name "Double Play Bar and Grille" and a State of Florida Alcoholic Beverage and Retail Tobacco License, Beverage # 26–01000 and Tobacco # 26–05137. (Def.'s Ex. 4.)

According to the Closing Statement dated December 22, 1998, Toxic Tony's

agreed to pay Three Amigos a total of $183,250.00 in installments for the Double Play. (Pl.'s Ex. 4.)

On December 24, 1998, the State of Florida filed the Articles of Incorporation of Toxic Tony's. (Pl.'s Ex. 19.)

Subsequent to the sale Plaintiff, as director and officer of Toxic Tony's, began operating the Double Play. Toxic Tony's continued to lease the Double Play location from Defendant. Plaintiff maintained a separate, personal bank account apart from Toxic Tony's corporate account. Toxic Tony's employed a bookkeeper to prepare its payroll and corporate tax returns. Plaintiff testified that this bookkeeper did not perform any work for him personally.

According to Plaintiff, on September 1, 1999 he caused Toxic Tony's to assign all of its assets to Plaintiff upon the advice of an attorney patron of the Double Play. At the April 11, 2001 hearing Plaintiff entered into evidence a resolution of the board of directors of Toxic Tony's, composed solely of himself, to assign all of Toxic Tony's equipment and inventory to Plaintiff. (Pl.'s Ex. 16.) Plaintiff also entered into evidence an Assignment of Inventory embodying the alleged transfer and an attached inventory listing all of the allegedly assigned equipment and inventory. (Pl.'s Ex. 17.) Plaintiff testified that he prepared the resolution, the assignment, and the inventory himself from forms found on the internet.

Plaintiff testified that the fourth page of the inventory had been lost after the assignment and recreated in March 2001 for discovery to Defendant.

Plaintiff testified that he had caused Toxic Tony's to assign its equipment and inventory to himself because Toxic Tony's had been administratively dissolved by the State of Florida.

The assignment did not provide for transfer of Toxic Tony's liquor and tobacco license to Plaintiff, although the inventory allegedly assigned included large amounts of liquor.

According to Plaintiff, the original September 1, 1999 assignment and inventory were lost between September 1999 and September 2000.

On September 24, 1999, the State of Florida administratively dissolved Toxic Tony's. (Pl.'s Ex. 19.) Plaintiff testified that he allowed Toxic Tony's to be dissolved because he did not want to pay corporation fees to the state.

Plaintiff did not alter the operation of Toxic Tony's or the Double Play after the assignments and the dissolution. Toxic Tony's continued to maintain its own bank account, continued to employ its own bookkeeper, continued to file corporate income tax returns, and continued to hold the Double Play liquor and tobacco license in its name.

According to Plaintiff, on September 1, 2000 he caused Toxic Tony's to enter into a second assignment of the Double Play equipment and inventory to himself. (Def.'s Ex. 3.) Plaintiff testified that he caused Toxic Tony's to enter into this second assignment because of the loss of the original September 1, 1999 assignment and inventory. The second inventory is identical to the September 1, 1999 inventory. Plaintiff testified that he recreated the lost inventory exactly from handwritten notes.

In early 2001 the relationship between Plaintiff and Defendant soured and Defendant began eviction proceedings.

On March 14, 2001 a Duval County Sheriff's deputy executed Defendant's Writ of Possession by padlocking the Double Play and thus locking up all of the equipment and inventory located therein.

On March 16, 2001 Plaintiff voluntarily filed for Chapter 13 bankruptcy protection.

On March 26, 2001 Plaintiff filed a Complaint to Recover Property, commencing the instant Proceeding. (Doc. 1.) Plaintiff requests that the Court allow him to enter the Double Play location and recover the equipment and inventory. Plaintiff leased another location for the Double Play and wishes to begin operating the restaurant at the new site in order to fund his Chapter 13 plan.

On March 26, 2001 Plaintiff also filed the instant Motion for Return of Property. Plaintiff contends in the Motion for Return of Property that the equipment held by Defendant under the Writ of Possession is essential to any reorganization by Plaintiff and that irreparable harm will result if the equipment is not returned as soon as possible to Plaintiff.

On March 27, 2001 Defendant responded to the Motion for Return of Property. Defendant argues that the equipment and inventory held pursuant to the Writ of Possession is not essential to Plaintiff's reorganization because Plaintiff has no interest in the equipment and inventory. Defendant argues that the equipment and inventory are owned solely by Toxic Tony's, an entity distinct from Plaintiff. Defendant asserts that Plaintiff fabricated the September 1, 1999 and September 1, 2000 assignments.

## CONCLUSIONS OF LAW

■ A Chapter 13 debtor may bring an adversary proceeding for the turnover of property of his estate pursuant to 11 U.S.C. § 542(a) and Federal Rule of Bankruptcy Procedure 7001(1). Section 542(a) provides, in relevant part,

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a) (2001). Although § 542(a) does not expressly provide that a court may order turnover to a Chapter 13 debtor rather than to a trustee, the Eleventh Circuit has recognized that courts may so order. *See Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280, 1282 (11th Cir.1998).

■ A bankruptcy court may order a third party to return property in its possession to a Chapter 13 debtor if three requirements are met. *See Lewis*, 137 F.3d at 1282. First, a debtor must prove by a preponderance that the property is "property of the estate" pursuant to 11 U.S.C. § 541. *See id.* Second, a debtor must prove by a preponderance that, at the moment his petition was filed, debtor had a right to use, sell or lease the property. *See id.* Finally, upon request of a third party in possession, a court must ensure that any interest of the third party in the property is adequately protected before ordering turnover. *See id.*

The Court finds it most efficient to address these requirements one at a time, because the failure of Plaintiff to sufficiently prove any one of these elements must result in denial of the Motion for Return of Property.

## I. THE REQUIREMENT THAT PROPERTY BE "PROPERTY OF THE ESTATE"

■ "Property of the estate" is defined broadly to include all legal or equitable interests of a debtor in property as of

the commencement of a case. *See Lewis,* 137 F.3d at 1283. The question of whether or not property is "property of the estate" is a federal one. *See id.* However, a court must look to state law in determining the nature and existence of a debtor's rights in particular property. *See id.*

It is clear that the equipment and inventory at issue originally belonged to Toxic Tony's by virtue of its purchase of Double Play from Three Amigos. The facts in the instant case suggest that Plaintiff might have subsequently acquired an interest in the Double Play equipment and inventory in one of two ways. First, Plaintiff might have acquired an interest in the Double Play equipment and inventory by operation of law upon the dissolution of Toxic Tony's, of which he alone held shares. Barring that sort of derivative interest, Plaintiff might have acquired an interest in the Double Play equipment and inventory through a direct transfer such as an assignment of the Double Play equipment and inventory.

### A. Transfer of property to debtor/shareholder by operation of law upon dissolution

■ Under Florida law, no legal or equitable interest passes to the shareholders, directors, or officers of a corporation upon dissolution. *See* FLA.STAT. § 607.1405(2)(a) (2001).

■ Accordingly, a debtor/shareholder of a dissolved corporation lacks any interest in the assets of the dissolved corporation so as to confer upon debtor/shareholder standing to object to a potentially fraudulent transfer of the dissolved corporation's assets. *See Miner v. Bay Bank & Trust Co. (In re Miner),* 185 B.R. 362, 366 (N.D.Fla.1995). The district court in *Miner* approved the bankruptcy court's finding that "[u]nder Section 607.1405, title to the property of Miner Corp. remained in the

corporation, even after the corporation was dissolved, and therefore, the debtor had no interest in the property transferred." *Id.*

■ The Court concludes that a debtor/shareholder similarly lacks sufficient interest in the property of his dissolved corporation to successfully move for turnover of that dissolved corporation's assets absent some direct transfer of an interest in those assets to debtor/shareholder.

### B. Transfer of property to debtor/shareholder by assignment

■ Under Florida law, a corporation may legally transfer any or all of its assets to whomever it chooses, so long as the proper organizational formalities are observed. *See* FLA.STAT. § 607.0302(4). A corporation may transfer all or substantially all of its assets outside of the ordinary course of business on the terms and conditions and for the consideration deemed appropriate by the corporation's board of directors, if the board of directors proposes and the shareholders approve of the transaction. *See* FLA.STAT. § 607.1202(1).

### C. Application to the instant case

The Court finds that the Double Play equipment and inventory seized by Defendant is not "property of the estate" under § 541 and therefore that Plaintiff may not force turnover of said equipment and inventory.

■ First, the Court finds that Plaintiff did not acquire any interest in the property by operation of law upon the dissolution of Toxic Tony's. Pursuant to § 607.1405(2), no legal or equitable interest in Toxic Tony's corporate assets passed to Plaintiff, Toxic Tony's sole shareholder, at the moment of dissolution. Thus, Plaintiff's status as sole shareholder of the defunct corporation Toxic Tony's did

not confer upon him any legal or equitable interest in the Double Play equipment and inventory once owned by Toxic Tony's.

█ Further, the Court finds that Plaintiff failed to prove by a preponderance that a direct transfer of the Double Play equipment and inventory occurred. The Court is not convinced that an assignment of Toxic Tony's equipment and inventory to Plaintiff was ever intended or effected. Specifically, the Court notes that Plaintiff's continued operation of the Double Play as an arm of Toxic Tony's rather than as a sole proprietorship evidences that Plaintiff never contemplated or exercised ownership control over the Double Play equipment and inventory. Plaintiff's failure to act like the owner of the Double Play leads to the inference that Plaintiff was not, in fact, the owner of the Double Play. Additionally, the execution of the September 1, 2000 "assignment" brings into doubt the existence of a true intent to transfer the Double Play equipment and inventory by the identical September 1, 1999 "assignment".

Therefore, the Court finds that at no point did any legal or equitable interest in the Double Play equipment and inventory pass from Toxic Tony's to Plaintiff. The Double Play equipment and inventory cannot then be "property of the estate" under § 541.

## II. THE REQUIREMENT THAT DEBTOR BE EMPOWERED TO USE, SELL OR LEASE THE PROPERTY AND THE REQUIREMENT THAT THIRD PARTY RECEIVE ADEQUATE PROTECTION

Because the Court finds that the property to be turned over to Plaintiff is not "property of the estate" under § 541, the Court need not address the other two elements of the *Lewis* test for turnover to a Chapter 13 debtor.

## CONCLUSION

The Court finds it inappropriate to order Defendant to return the Double Play equipment and inventory to Plaintiff under § 542 because Plaintiff failed to prove by a preponderance that the Double Play equipment and inventory are "property of the estate" under § 541.

The Court will enter a separate Order in accordance with these Findings of Fact and Conclusions of Law.