**In re: WELLINGTON VISION, INC., Debtor**

**Wellington Vision, Inc., Appellant,**

**v.**

**Pearle Vision, Inc., Appellee.**

**No. 06–80446–CIV.**

United States District Court, S.D. Florida.

Feb. 20, 2007.

Michael D. Joblove, Nina Greene Kersh, Carlos E. Sardi, Genovese Joblove & Battista, Miami, FL, for Appellee.

Susan D. Lasky, Susan D. Lasky PA, Wilton Manors, FL, for Appellant.

## ORDER AFFIRMING BANKRUPTCY COURT ORDERS, AND CLOSING CASE

GOLD, District Judge.

**THIS CAUSE** is before the Court upon the appeal filed by Appellant Wellington Vision, Inc., ("Wellington"), that seeks to reverse the Bankruptcy Court's Order Granting Pearle Vision Relief from Automatic Stay and Denying Debtor's Motion to Extend Time to Assume or Reject Sublease, and the Bankruptcy Court's Order Denying Reconsideration of that Order. Wellington filed its initial brief on June 16, 2006 [DE 7]. Appellee Pearle Vision, Inc., ("PVI") filed an answer brief [DE 16], and Wellington filed a reply [DE 21]. Having reviewed the briefs and the record, I affirm the Bankruptcy Court's Orders.[1]

### I. Facts

The parties have presented a detailed factual background of the events preceding this appeal, and there are no facts in dispute. The relevant facts are as follow:

On April 1, 2002, PVI entered into a franchise agreement with Philip DeSantis, O.D. ("DeSantis"), individually, for the operation of a PVI store in the Mall at Wellington Green in Wellington, Florida. On the same day, PVI and DeSantis entered into a sublease agreement for the lease of the premises at the Wellington Mall; the sublease agreement was a part of the franchise agreement.

On April 8, 2002, DeSantis assigned his interest in the franchise agreement and sublease to Pearle Vision WG, Inc., a company wholly-owned by DeSantis. PVI consented to the assignment. The parties subsequently amended the franchise agreement whereby Pearle Vision WG, Inc. changed Its name to Wellington Vision, Inc.

The franchise agreement provided that PVI granted Wellington a "non-transferable, non-exclusive right, license and privilege to use the Pearl Vision System solely in connection with the operation of the Franchised Business at the Location." The franchise agreement specifies that the Pearle Vision System includes:

> proprietary rights in certain valuable trade names, service marks, trademarks, logos, emblems, and indicia of origin (the "Marks"). It also includes proprietary rights in certain copyrights, software, office decor, layouts, design, color schemes, equipment, signs, methods of inventory and operation control, bookkeeping and accounting, advertising,

---

1. This appeal was scheduled for oral argument twice, but the parties requested an extension of time, as they suggested that they were settling this case. I instructed the parties to submit settlement documents no later than February 16, 2007, or I would enter an order without oral argument. The parties did not respond.

promotional and marketing programs, access to private label products, and business practices and policies.

The franchise agreement further provides that Wellington was granted a limited license to use PVI's marks:

the Marks are the exclusive property of PVI, and that nothing herein shall give Franchisee any right, title, or interest in or to any of the Marks except as a mere privilege and license during the term hereof to display and use the same according to the limitation set forth herein. All uses of the Marks by Franchisee inure to the benefit of PVI. Franchisee understands and agrees that the limited license to utilize the Marks granted hereby applies only to such marks as are designated by PVI, and which have not been designated by PVI as being withdrawn from use, together with those which may hereafter be designated by PVI in writing ... Franchisee's right to use the Marks is limited to such uses as are authorized hereunder, and any unauthorized uses thereof shall constitute an infringement of PVI's rights and a material and incurable breach of this Agreement which, unless waived by PVI, shall entitle PVI to terminate this Agreement unilaterally and immediately upon notice to Franchisee, with no opportunity to cure, and this Agreement shall thereafter be null, void, and of no effect (except for those post-termination and post-expiration provisions which by their nature shall survive).

As to the transferability of the franchise, the agreement provides that

With respect to the Franchisee's obligations hereunder, this Agreement is personal being entered into in reliance upon and in consideration of the singular personal skill and qualifications of Franchisee, and the trust and confidentiality reposed in Franchisee by PVI. There-fore ...neither Franchisee's interest in this Agreement, nor any of Franchisee's rights or privileges hereunder, nor the Franchise Business or any interest therein, may be transferred, assigned, sold, shared, redeemed, sublicensed or divided voluntarily or involuntarily, directly or indirectly, by operation of law or otherwise, in any manner, without the prior consent of PVI procured in accordance with the terms and conditions set forth in this Paragraph 17.... PVI's consent to such transfer and sale shall not be unreasonably withheld.

Finally, the franchise agreement provides that Wellington would pay royalties, rent, advertising fees and sales to PVI. Prior to its filing for Chapter 11, Wellington had failed to pay fees required under the agreement in the amount of $11,759,80.

On June 14, 2005, Wellington filed a petition for voluntary relief under Chapter 11 of the Bankruptcy Code. Wellington continued to operate the franchise as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On July 21, 2005, PVI filed a motion for relief from the automatic stay provision of the Bankruptcy Code in order to terminate the franchise agreement and prevent Wellington from continuing to use PVI's marks. The Bankruptcy Court held a hearing on the matter in August, 2005, at which time the Court heard argument from both parties.

Over the next several months, while the Motion for Relief from Stay was pending, Wellington requested and received several extensions of time to either assume or reject the sublease on the franchise location in the mall. On January 5, 2006, the Bankruptcy Court entered an Order granting relief to PVI from the automatic stay provisions so that PVI could terminate the franchise agreement. The Bankruptcy Court reasoned that the franchise agree-

ment involved a non-exclusive trademark license agreement, and that the license agreement invoked federal trademark law which prohibits Wellington from assuming or assigning the franchise agreement without the consent of PVI, which PVI would not grant.[2]

The Bankruptcy Court also denied Wellington's third request for an extension of time to assume or reject the sublease, and deemed the sublease rejected as of December 27, 2005.[3]

Wellington moved for reconsideration, which the Bankruptcy Court denied, leading to this appeal.

## II.  Standard of Review

■  District courts sit as appellate courts over bankruptcy decisions. *Miner v. Bay Bank & Trust Co. (In re Miner)*, 185 B.R. 362, 365 (N.D.Fla.1995), aff'd, 83 F.3d 436 (11th Cir.1996) (Table).  A district court reviews a bankruptcy court's legal conclusions *de novo.  In re Englander*, 95 F.3d 1028, 1030 (11th Cir.1996).

■  By contrast, a district court must accept a bankruptcy court's factual findings unless they are clearly erroneous, and it must also "give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses." *In re Englander*, 95 F.3d at 1030. "The bankruptcy court's findings of fact are not clearly erroneous unless, in light of all the evidence, [the appellate court is] left with the definite and firm conviction that a mistake has

been made." *In re: Int'l Pharmacy & Discount II, Inc.*, 443 F.3d 767, 770 (11th Cir.2005); *see also In re Scrap Metal Buyers of Tampa, Inc.*, 253 B.R. 103, 107 (M.D.Fla.2000) ("[t]he 'clearly erroneous' standard means that the reviewing court must be left 'with the definite and firm conviction that a mistake has been made.'") (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 375, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).  Regarding mixed questions of law and fact, the district court must apply a clearly erroneous standard to the bankruptcy court's factual findings, and a *de novo* standard to its legal determinations. *Bakst v. Marks (In re Marks)*, 131 B.R. 220, 222 (S.D.Fla. 1991), aff'd, 976 F.2d 743 (11th Cir.1992) (Table).

## III.  The Bankruptcy Court Did Not Err In Granting Stay Relief to PVI

In its Order granting relief from stay to PVI, the Bankruptcy Court held that under section 365(c)(1) of the Bankruptcy Code, Wellington could not assume or assign the franchise agreement without the consent of PVI. While section 365(a) provides that trustees may, as a general rule, assume or reject executory contracts, certain exceptions to that rule exist.  Subsection 365(a) states that "except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval,

---

**2.**  The Bankruptcy Court's Order stated that "The Court is persuaded that under the case law cited by PVI including, but not limited to, *In Re Sunterra Corp.*, 361 F.3d 257 (4th Cir. 2004) and *In re Catapult*, 165 F.3d at 749 that pursuant to 365(c)(1) of the Bankruptcy Code the Debtor herein may not assume or assign the Franchise Agreement without consent of Pearle Vision, Inc. based on, among other things, the fact that the Debtor has a non-exclusive trademark license with PVI. As a result, because the Franchise Agreement is an

executory contract, applicable federal trademark law excuses PVI from accepting performance from or rendering performance to an entity other than the Debtor thereby precluding assumption by the Debtor without the consent of PVI as a matter of law."

**3.**  December 27, 2005 was the deadline to assume or reject the sublease, which Wellington was seeking to extend once again.

may assume or reject any executory contract or unexpired lease of the debtor." Section 365(c) provides, in relevant part, that:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment; . . .

11 U.S.C.A. § 365(c); *City of Jamestown v. James Cable Partners, L.P. (In re James Cable Partners)*, 27 F.3d 534, 537 (11th Cir.1994).

The Bankruptcy Court found that PVI had granted to Wellington a non-exclusive trademark license, which was therefore governed by federal trademark law-*i.e.*, the Lanham Act. 15 U.S.C. § 1051 *et seq.* The Lanham Act provides that a licensor who grants a non-exclusive license for the use of its trademark is entitled to certain protections, including restrictions on assignment. *See In re Travelot Co.*, 286 B.R. 447, 455 (Bankr.D.Ga.2002). In *Travelot*, the court explained that "[t]he grant of a non-exclusive [trademark] license is . . . *one personal to the assignee* and thus not freely assignable to a third party. Accordingly, a licensor need not accept performance from or render performance to an entity other than the licensee". *Id.* (citations omitted, emphasis added).

Reading section 365(c) in conjunction with the assignment restrictions of the Lanham Act, the Bankruptcy Court determined that Wellington could not, as a matter of law, assume or assign the franchise agreement without PVI's consent. Because PVI would not consent to any assumption or assignment, the Bankruptcy Court granted its motion for relief from stay such that PVI could terminate the franchise agreement.

In its initial brief, Wellington raises three arguments against the Bankruptcy Court's decision. First, it argues that the terms in the franchise agreement were inadequate to create a non-exclusive license for use of a trademark, and that therefore the Lanham Act does not apply to this case. Next, it argues that even if the Lanham Act applied, the parties had included an assignment provision in the contract, and have therefore "opted out" of the non-assignment provisions of the Lanham Act. Finally, Wellington argues that section 365(c) prohibits assumption or assignment by a trustee, but not by a debtor in possession, and that therefore Wellington should have been permitted to assume the franchise agreement.

### A. The Franchise Agreement Includes a Non–Exclusive Trademark License

■ Wellington relies on *In re Travelot Co.*, 286 B.R. 447, 455 (Bankr.D.Ga.2002) for its position that the franchise agreement did not create a non-exclusive trademark license by PVI to Wellington. In *Travelot*, CNN and a travel service known as Travelot, Inc., entered into an agreement by which CNN would provide pop-up ads for Travelot on its website, CNN.com. When Travelot failed to pay the funds due under the agreement, CNN declared Travelot in default, after which Travelot filed a Chapter 11 petition. CNN sought to prevent the debtor-in-possession from assuming Travelot's contract by virtue of section 365(c) and the Lanham Act.

The court began with the position that "[f]or a trademark license to exist in the first place, there must be evidence that the trademark owner intended to grant a license in its trademark." *Travelot*, 286 B.R. at 455. After examining the agreement between the parties, the court found that while Travelot had granted CNN the right to use its trademarks, CNN had not granted Travelot any such rights. The parties' agreement had stated that Travelot could request permission to use CNN's logos, but never granted actual permission for their use. The court found that the mere right to *request permission* to use a logo does not constitute a license, and therefore the Lanham Act could not bring the contract within the assumption and assignment exception of section 365(c).

In this case, the franchise agreement is quite explicit in granting Wellington the right to use PVI trademarks. First, the agreement specifically states that it created a "non-transferable, non-exclusive right, license and privilege to use the Pearle Vision System solely in connection with the operation of the Franchised Business at the Location." The franchise agreement specifies that the Pearle Vision System includes:

> proprietary rights in certain valuable trade names, service marks, trademarks, logos, emblems, and indicia of origin (the "Marks").

The franchise agreement further refers to Wellington's right to use the marks as a license:

> the Marks are the exclusive property of PVI, and that nothing herein shall give Franchisee any right, title, or interest in or to any of the Marks except as a mere privilege and license during the term hereof to display and use the same according to the limitation set forth herein. All uses of the Marks by Franchisee inure to the benefit of PVI. Franchisee understands and agrees that the limited license to utilize the Marks granted hereby applies only to such marks as are designated by PVI, and which have not been designated by PVI as being withdrawn from use, together with those which may hereafter be designated by PVI in writing.

The agreement in this case clearly granted Wellington a license to use trademarks belonging to PVI, and therefore the Lanham Act is the "applicable law" by which the exception to assumption and assignment is triggered via section 365(c).

## B. Contractual Provisions Contemplating Assignment Do Not Overcome the Lanham Act's Assignment Restrictions

Wellington takes the position that because the franchise agreement contemplated circumstances under which assignment might be possible, the parties essentially "opted out" of federal trademark law and its restrictions on assignment. Wellington relies on *In re Quantegy*, 326 B.R. 467 (Bkrtcy.M.D.Ala.2005) in support of that position.

In *Quantegy*, the debtors had entered into several licensing agreements by which they were permitted to use trademarks and patents belonging to Sony. The agreements contained restrictions on assignment, with certain exceptions: wholly-owned subsidiaries, sister divisions and parent companies of the licensee could receive assignment without consent of the licensor. Upon the debtor's filing a petition in bankruptcy, Sony sought to prohibit any assignment of the contracts to any third parties, arguing that federal patent and trademark law provided the exception to assignment under section 365(c). The bankruptcy court held that "[a]pplicable law does not excuse Sony's performance under a contract in which Sony expressly

consents to be bound to a third-party assignee." *Id.* at 471.

The facts in this case are distinguishable from those in *Quantegy*. In *Quantegy*, the agreement specifically allowed for assignment without consent from Sony under certain circumstances. In contrast, the agreement at issue in this case expressly stated that *any* assignment would be prohibited absent consent from PVI. Wellington relies upon a sentence in the franchise agreement that provides that "PVI's consent to such transfer and sale shall not be unreasonably withheld," in order to bring this case in line with *Quantegy*. However, a clause against unreasonable withholding of consent is not the equivalent of a clause expressly allowing assignment without consent. The franchise agreement is consistent with federal trademark law in that it restricts assignment without consent of the licensor; the parties have not, therefore, "opted out" of the Lanham Act's restrictions simply by agreeing that PVI would not unreasonably withhold consent. Thus the Lanham Act is the applicable law governing assignment of the franchise agreement, and creates an exception to assignment pursuant section 365(c).

### C.  Section 365(c) Applies to a Debtor in Possession as well as a Trustee

■ Wellington strenuously argues that section 365(c) does not apply to a debtor in possession, but instead, only to a trustee. Under Eleventh Circuit standards, Wellington is mistaken. In *City of Jamestown v. James Cable Partners, L.P. (In re James Cable Partners)*, 27 F.3d 534, 537 (11th Cir.1994), the court held that

**A debtor in possession generally has all the rights, powers, and duties of a trustee, 11 U.S.C.A. § 1106 (West 1993). Thus, as a general rule, a debtor in possession may assume any executory contract from itself as debtor.**

The City contends that James Cable may not assume the cable franchise agreement pursuant to § 365(a) because this case falls within an exception to § 365(a)— § 365(c)(1). Our task, then, is to determine whether this case falls within the ambit of § 365(c)(1).

Subsection 365(c)(1) states in relevant part:

**The trustee [read debtor in possession]** may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment; . . .

11 U.S.C.A. § 365(c) (West 1993) (emphasis added). **Under the plain language of § 365(c)(1), James Cable (debtor in possession) may not assume the cable franchise agreement (an executory contract), without regard to whether the cable franchise agreement contains a prohibition against assignment, if two conditions are met. First, "applicable law" must excuse the City from accepting performance from an entity other than James Cable as debtor or debtor in possession. Second, the City must not have consented to the assumption of the cable franchise agreement.** (emphasis added, bracketed text in original). The Eleventh Circuit has made abundantly clear that section 365 applies not only to trustees, but also to debtors in

possession.[4] As a debtor in possession, therefore, Wellington is in the same position as a trustee as to the application of section 365. The assignment and assumption exceptions therefore apply to Wellington, and it is prohibited from either assigning or assuming the agreements absent PVI's consent. Because PVI would not consent, the Bankruptcy Court correctly determined that Wellington is legally barred from assuming or assigning the agreements.

## IV. The Bankruptcy Court Did Not Err in Denying the Debtor's Motion to Extend Time to Assume or Reject the Sublease

Wellington acknowledges that the sublease was an integral part of the franchise agreement, and points out that the Bankruptcy Court denied the motion to extend time to assume or reject the sublease based upon its decision to grant PVI's motion for relief from stay to terminate the franchise agreement. Wellington argues that the Bankruptcy Court's decision to grant PVI's motion for relief from stay was erroneous, and that therefore the denial of the extension of time to assume the sublease was correspondingly in error. Because I affirm the Bankruptcy Court's decision to grant PVI's motion for relief from stay, I also affirm its decision to deny Wellington's motion to extend time to assume or reject the sublease.

## V. The Bankruptcy Court Did Not Err in Denying Wellington's Motion for Reconsideration

Wellington claims that the Bankruptcy Court's decision to deny its motion for reconsideration was a manifest error of both fact and law. That assertion is based on Wellington's contention that: (1) the Bankruptcy Court manifestly erred in fact and in law when it granted PVI's motion for relief from stay without evidence that a trademark license existed between the parties, and (2) that the Bankruptcy Court manifestly erred in law when it ignored the plain meaning of the word "trustee."

Under Eleventh Circuit standards, an appellate court reviews a denial of a motion for reconsideration for abuse of discretion. *Wakefield v. Cordis Corp.*, 211 Fed.Appx. 834, 2006 U.S.App. LEXIS 28680 (11th Cir.2006); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1121 (11th Cir.2004). Having reviewed the Bankruptcy Court's Order Granting Relief from Stay and Denying Extension of Time, and its Order Denying of Reconsideration, I conclude that the Bankruptcy Court neither abused its discretion, nor did it err in fact or in law.

I have determined, as discussed above, that ample evidence existed to demonstrate that a trademark license agreement existed between the parties; I therefore find no error on the part of the Bankruptcy Court in its equivalent determination. Also as discussed above, the case law in

---

4. Other courts have come to the same conclusion. *See, e.g., Perlman v. Catapult Entertainment (In re Catapult Entertainment),* 165 F.3d 747, 750 (9th Cir.1999)("it is well-established that § 365(c)'s use of the term 'trustee' includes Chapter 11 debtors in possession); *Institut Pasteur v. Cambridge Biotech Corp.,* 104 F.3d 489, 492 (1st Cir.1997)("[a]s debtor-in-possession, CBC has substantially the same rights and powers as a chapter 11 trustee, including the power to assume executory con-

tracts under Bankruptcy Code § 365); *In re West Electronics, Inc.,* 852 F.2d 79, 82–83 (3d Cir.1988)("[t]he trustee [which includes the debtor in possession] may not assume ... any executory contract ... if ... (1)(A) applicable law excuses a party, other than the debtor, to such contract ... from accepting performance from ... an entity other than the debtor or the debtor in possession ... and (B) such party does not consent to such assumption").

this circuit and others is clear that the term "trustee," in the application at issue, includes a debtor or debtor in possession.

I therefore conclude that the Bankruptcy Court made no errors in either fact or law, and did not abuse its discretion. The Bankruptcy Court properly denied Wellington's motion for reconsideration.

## V. CONCLUSION

In light of the foregoing, I conclude that the Bankruptcy Court did not err in granting relief from stay to PVI, and from denying Wellington's third request for an extension of time to assume or reject the sublease. I further conclude that the Bankruptcy Court did not err in denying Wellington's motion for reconsideration.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. I AFFIRM the Bankruptcy Court's Orders.

2. All pending motions are DENIED AS MOOT.

3. This case is CLOSED.