In re Saul FOOS, Debtor.

William A. BRANDT, Jr., Trustee, Plaintiff,

v.

AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Successor to Lake Shore National Bank, Defendant.

Bankruptcy No. 93 B 25069.
Adv. No. 95 A 829.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 26, 1995.

Konstantinos Armiros, David E. Cohen, Boehm, Pearlstein & Bright, Chicago, IL, for Defendant.

Daniel A. Zazove, Barbakoff, Zazove & Glick, Chicago, IL, for Trustee/Plaintiff.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

**Factual Allegations**

On July 21, 1995, the Trustee filed an adversary proceeding against American National Bank ("ANB") as successor to Lake Shore National Bank ("LSNB") to determine ANB's interest in the proceeds of the sale of the Debtor's primary residence, to recover two allegedly preferential transfers in the amount of $225,000, to set aside a guaranty, an assignment of beneficial interest in a land trust and payments as fraudulent transfers under § 548 and under Illinois law and to object to allowance of LSNB's claim. Before answering the complaint, ANB filed a motion

to dismiss for failure to join an indispensable party, Linda Foos, failure to state a claim and for judgment on the pleadings.

There are two loan transactions with LSNB that are the subject of the complaint. The first was a loan in the principal amount of $100,000 dated May 7, 1992 to Saul Foos and Associates, Inc. ("SFA") and Foos, Miller and Associates, Inc.[1] The Debtor was the president, sole director and sole stockholder of SF & A. On May 24, 1993, the Debtor executed a Continuing Unconditional Guarantee of the indebtedness of SFA. On July 2, 1993, the Debtor executed a Continuing Unconditional Guarantee of the indebtedness of FMA (collectively, the "Guarantees"). Both Guarantees provided that the Guarantee was NOT secured by any personal property of the guarantor.

Under the second loan transaction LSNB lent $100,000 to the Debtor and his wife pursuant to a Revolving Credit Agreement. The $100,000 was secured by a second mortgage on their residence at 647 W. Armitage, Chicago, Illinois ("Property"). The Property was held in a land trust ("Land Trust"). Accordingly, the land trustee executed a Revolving Credit Note and the Debtor executed a Guaranty of Revolving Credit Note ("Revolving Guaranty"). The Revolving Guaranty provided that it was secured by an Assignment of Beneficial Interest in the Land Trust ("ABI"). The ABI provided that it was granted as security for:

(I) all principal of and interest on that certain Note of the Assignor dated as of August 2, 1993 originally made payable to the order of the Secured Party in the original principal amount of $100,000 and (ii) any and all other indebtedness, obligations and liabilities of the Assignor to the Secured Party whether now existing or hereafter arising, due or to become due, direct, indirect or contingent, joint or several or joint and several; and as security for all expenses and charges, legal or otherwise, including attorneys' fees paid or incurred by the Secured Party, in relying upon or protecting this Assignment or the indebtedness secured hereby.

The ABI was not lodged with the land trustee.

On July 21, 1994, the Property was sold and the Revolving Credit Note was paid from the sale proceeds. There remains $157,969.81 proceeds from the sale. ANB asserts a lien on the Debtor's ½ interest by reason of the Guarantees and the ABI. LSNB filed a secured proof of claim in the amount of $632,874.67 from the deficiency in the Debtor's guaranty of SFA's debt. The Trustee disputes this claim on the grounds that the Guarantees were not intended to be collateralized and the ABI was not lodged with the land trustee and is, therefore, unperfected.

The following chart summarizes the loan transactions:

First Loan Transaction

| Date | Document | Party(s) |
|------|----------|----------|
| 5/4/92 | $100,000 loan | SFA and FMA |
| 5/24/93 | Guarantee of SFA debt | Debtor |
| 7/2/93 | Guarantee of FMA debt | Debtor |

Second Loan Transaction

| Date | Document | Party(s) |
|------|----------|----------|
| 8/2/93 | Revolving Credit Agreement | Debtor and Linda Foos (wife) |
| 8/2/93 | $100,000 note | Land Trustee |
| 8/2/93 | Revolving Guaranty | Debtor |
| 8/2/93 | ABI | Debtor and Linda Foos |

1. At the time the loan documents were executed Foos, Miller and Associates, Inc. had changed its name to Saul Foos and Associates, Inc.

*Count I—Judgment on the Pleadings; Perfected Interest in ABI*

■ Judgment on the Pleadings under Fed.R.Civ.P. 12(c) is only available when the pleadings are closed. Generally, when a motion under Rule 12(c) is filed before an answer the court should treat it as a motion under Rule 12(b)(6). *New York State United Teachers v. Thompson,* 459 F.Supp. 677 (N.D.N.Y.1978). In this case however, Count I seeks a determination that ANB has no interest in the excess proceeds from the sale of the Debtor's residence. Therefore, dismissing Count I would not provide ANB or the Debtor with the necessary declaration as to the parties' interests and priorities in the sale proceeds. Nor does the record reflect established facts on which to base a judgment in favor of either party. Accordingly, the Motion of ANB to Dismiss Count I is denied, without prejudice.

ANB also contends that Count I must be dismissed for failure to join an indispensable party, Linda Foos, the Debtor's wife. This issue is moot since Linda Foos was granted leave to intervene by order entered by this Court on October 3, 1995.

*Count II Preference—Failure to State a Claim*

In Count II the Trustee alleges that two payments made on December 9, 1992 and August 25, 1993 in the amounts of $150,000 and $75,000, respectively, out of the Debtor's account to LSNB and the assignment of the beneficial interest constitute avoidable preferences under § 547. The payments were made on behalf of SFA, who the Trustee contends was an "insider" of the Debtor under § 101(31)(A)(iv).

The transfers were made more than 90 days but less than one year before the petition date. Accordingly, the transfers are only avoidable if the creditor was an "insider" under § 547(b)(4)(B) or under *Deprizio*[2] if the transfers were made for the benefit of an inside creditor.

■ Section 547(b)(4)(B) is not available to extend the reach back period beyond 90 days. The creditor, LSNB, was not an "insider" as that term is defined in § 101(31), at any time.[3] Therefore, the transfers are avoidable under the one year reach back only if the transfers were made for the benefit of an insider under the *Deprizio* holding. The factual situation that gave rise to the avoidable transfer in *Deprizio* is the opposite, however, of the factual situation present here. In *Deprizio* the transfer was made by the debtor/borrower to the lender. The loan had been guaranteed by an "insider". The payments on the loan thus reduced the insider's liability on the guaranty. It was this benefit to the insider/guarantor in having its contingent claim on the guaranty reduced that led the court to conclude that the one year reach back period for insiders applied. In this case the Debtor is the Guarantor, and the payments reduced SFA's liability as the primary obligor. But *Deprizio* does not apply in every situation where an "insider" is benefitted by a transfer, the "insider" must have been an *inside creditor of the Debtor* with respect to the antecedent debt that the Debtor paid. In *In re Southmark Corp.,* 993 F.2d 117, 119–20 (5th Cir.1993) the court explained that based upon the language of the statute the "insider must be a creditor in connection with the antecedent debt underlying the transfer:"

> Read as a whole, the plain language of § 547(b) persuades us that the Code permits recovery only if the transfer is related to the preferred creditor's claim. The statute authorizes the trustee to avoid a transfer "to or for the benefit of a creditor" ((b)(1)), "for or on account of an antecedent debt" ((b)(2)), (5) that enables such creditor to receive more than such creditor would receive if—(A) the case were a case under chapter 7 . . . ; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

**2.** *Levit v. Ingersoll Rand Financial Corp. (In re Deprizio),* 874 F.2d 1186 (7th Cir.1989). In *Deprizio,* the Seventh Circuit ruled that a payment by a debtor to a lender on a loan guaranteed by an insider, benefits the insider and is thus avoidable within the one year reach back of § 547(b)(4)(A). The result in *Deprizio* was changed by Congress in the 1994 Amendments to § 550(c) of the Bankruptcy Code.

**3.** The Trustee has not alleged that LSNB was an "insider."

§ 547(b)(5). The phrase "such debt" in (b)(5)(C) refers to the "antecedent debt" of (b)(2). In other words, the antecedent debt for which the transfer is made (Southmark's guaranty obligation) must be the same debt subject to "such" creditor's (SPS's) claim. The transfer must do more than incidentally benefit inside creditor SPS; the transfer must benefit SPS in relation to the antecedent debt that triggered the transfer.

The Trustee alleges in his Response that SFA has a claim against the Debtor, but the Trustee has failed to allege that SFA's claim against the Debtor is related to the antecedent debt that was the subject of the alleged preferential transfers. In its Surreply the Trustee argues that the Seventh Circuit did not impose a nexus requirement between the antecedent debt that was paid and the inside creditor's claim against the debtor and that this court is not bound by and should not follow the narrower view espoused in *Southmark*. Surreply at 7. A closer reading of *Deprizio* reveals, however, that the Seventh Circuit did in fact impose a nexus requirement.

In *Deprizio* the trustee sought to avoid three different transfers to outside creditors under the one-year reach back period on the theory that the transfers benefited an inside creditor. The transfers in question were to the Internal Revenue Service ("IRS"), to various pension and welfare funds and to outside lenders who had guarantees by insiders of the debtor. In part II.B.I of the opinion the court analyzed whether payments made to the IRS for trust fund taxes could be recovered under the extended one-year reach back period on the theory that the payment to the IRS benefitted an insider. The court had no problem in finding a benefit to the insider. Since an "insider" may be liable under 26 U.S.C. § 6672(a) when the corporation does not pay its taxes, any payments by the corporation reduces the insider's liability. As the court noted however, "[s]ection 547(b)(1) speaks, [ ], of payments for the benefit of

creditors, not benefits at large." *Deprizio* at 1191. Because § 6672(a) did not give the insider a right to recover from the corporation in the event he was called upon to pay the taxes, the Seventh Circuit determined that the insider "does not hold a 'claim' against the debtor and so is not a creditor." *Id.* The Seventh Circuit did not discuss whether the insiders were otherwise creditors of the debtors, but clearly they were since they held contingent claims against the debtor on the guarantees that formed the basis for the *Deprizio* rule. *See In re Fastrans, Inc.,* 142 B.R. 241, 245 (Bankr. E.D.Tenn.1992) ("[i]ndeed, in *Levit* although the insiders were creditors of the debtor as to obligations they guaranteed, they were not creditors as to obligations owed the Internal Revenue Service because the Internal Revenue Code afforded them no right of recovery over against the debtor. In other words, it is not enough that an insider be a creditor of the debtor in a general sense; the insider must have a 'claim' against the debtor attributable to the specific debt he or she guaranteed in order to render transfers made by the debtor on account of that debt to the non-insider transferee avoidable under § 547(b). Absent such a claim, the insider is not a 'creditor' and such transfers cannot have been made 'for the benefit of a creditor.' ")[4]

Since SFA was not an "insider" under the *Deprizio* holding, the Trustee is limited to the 90 day reach back period. Because the allegedly preferential transfers occurred outside of the 90 day period, the Trustee has failed to state a claim against ANB under § 547 and Count II must be dismissed.

*Count III and IV—Failure to State a Claim for a Fraudulent Conveyance under § 548 or Illinois Law*

In Counts III and IV the Trustee alleges that the following transfers are avoidable under § 548 (Count III) and Illinois law (Count IV): 1) the Revolving Guaranty, 2)

---

4. In *In re Octagon Roofing,* 124 B.R. 522 (Bankr. N.D.Ill.1991) the court applied *Deprizio* without requiring or even addressing the nexus requirement. (The court in *Octagon Roofing* did determine that *Deprizio* did not impose a requirement that the benefit to the insider be pecuniary in nature). To the extent that the court failed to require a nexus between the benefit and the insider's claim against the debtor, this Court respectfully disagrees.

the ABI, and 3) payments made to LSNB from the Debtor's account for the benefit of SFA.[5] ANB argues that Counts III and IV must be dismissed because 1) the Trustee has failed to plead intent to defraud with particularity, 2) the Trustee has failed to state a claim for fraud in law since the Debtor received "reasonably equivalent value" for the alleged fraudulent transfers, and 3) ANB received the transfers from the Debtor for value and in good faith.

In order to establish a claim for intent to defraud under § 548(a)(1) (fraud in fact), the Trustee must allege that the transfers were made with "actual intent to hinder, delay, or defraud." In ¶¶ 68A and 88A the Trustee alleges that the each transfer "was made by the Debtor with the actual intent to hinder, delay or defraud the investors in his Ponzi scheme." This general allegation of fraud in fact does not satisfy the requirements of Rule 9(b) Fed.R.Civ.P. that allegations of fraud must be plead with particularity. *See Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240 (2nd Cir.1987); *In re Miner*, 185 B.R. 362 (N.D.Fla.1995) (complaints alleging fraudulent conveyance failed to plead fraud with requisite particularity).

The Trustee argues that fraudulent intent may be presumed because the Debtor was operating a Ponzi scheme, relying on *In re M & L Business Machine Company, Inc.*, 155 B.R. 531 (Bankr.D.Colo.1993) and *In re Independent Clearing House Co.*, 77 B.R. 843, 860 (D.Utah 1987). Both of those cases involved fraudulent conveyance actions against individual investors in the Ponzi scheme who had received payments from the debtor before the Ponzi scheme collapsed. Here we have allegations that payments on loans and the granting of security for a loan were fraudulent transfers. Such circumstances are significantly different from payments that are made as part of and in furtherance of a Ponzi scheme and precludes this Court from inferring an intent to defraud. *See Stratton v. Equitable Bank N.A.*, 104 B.R. 713, 726–727 (D.Md.1989). Clearly when a debtor is operating a Ponzi scheme he knows that he is going to defraud certain investors as sooner or later he will run out of money. Therefore, when an action is brought to recover payments that were part of the Ponzi scheme it is reasonable to presume an intent to defraud. Where, as here, however, the individual who is operating the Ponzi scheme conducts ordinary business transactions outside of the Ponzi scheme, the basis for presuming fraud is not present and must be alleged in accordance with Rule 9(b).[6]

Even if a debtor does not act with intent to defraud, a transfer may still be set aside as fraudulent if the transfers were constructively fraudulent under § 548(a)(2). In order to establish constructive fraud, the transfer must have been made for "less than a reasonably equivalent value." Value is defined under § 548(d)(2)(A) as "property, or satisfaction or securing of a present of antecedent debt of the debtor." The Revolving Guaranty and the ABI were granted as security for a $100,000 loan to the Debtor. The ABI was also granted to secure any and all other obligations of the Debtor to LSNB. Both of these transfers clearly qualify as "reasonably equivalent value" and the Trustee has, therefore, failed to state a claim that such transfers can be avoided under § 548(a)(2) or Illinois law.

5. Both parties agree that the requirements under § 548 and the Illinois Fraudulent Transfer Act are the same. The Court will, therefore, deal with both Counts simultaneously.

6. In his Surreply the Trustee cites *In re Baker & Getty Financial Services, Inc.*, 98 B.R. 300 (Bankr.N.D.Ohio 1989), *aff'd*, 974 F.2d 712 (6th Cir.1992) in support of his argument that intent to defraud can be presumed where the debtor operated a Ponzi scheme even when the suit involves recovery of transfers made to a bank. *Baker & Getty* was decided on a motion for summary judgment so Rule 9(b) pleading requirements were not discussed. Furthermore, to the extent that the court in *Baker & Getty* determined that fraudulent intent could be inferred in normal business transactions this Court disagrees. The cases the court relied on to support its holding discussed the debtor's fraud with respect to investors in the Ponzi scheme, the court failed to explain why the debtor's knowledge that the scheme would inevitably collapse should be extended to ordinary business transactions and payments on valid contracts.

245

The Trustee has also alleged that the four payments made to LSNB are avoidable under the constructive fraud provisions.[7] Each of these payments was, however, made on account of antecedent debts and reduced the debts and the Debtor's liability on his Guarantees dollar for dollar. As a matter of law such payments are for reasonably equivalent value and thus not avoidable under § 548(a)(2) or under Illinois law. *In re Walters*, 163 B.R. 575, 581 (Bankr.C.D.Cal.1994), *citing, In re United Energy Corp.*, 944 F.2d 589, 595 (9th Cir.1991); *Atlanta Shipping, supra* at 249 ("repayment of an antecedent debt constitutes fair consideration unless the transferee is an officer, director, or major shareholder of the transferor" under New York law).[8]

Based upon the above analysis the Trustee has failed to state a claim against ANB under § 548 of the Illinois Fraudulent Conveyance Act and Counts III and IV are, therefore, dismissed.

*Count V—Failure to State a Claim*

In the last Count of the complaint the Trustee alleges that the secured proof of claim filed by LSNB on May 9, 1994 in the amount of $632,874.67 should be disallowed. The Trustee relies upon the claims set forth in the preceding four Counts to support his claim for disallowance. Since this Court has struck only three of the first four counts the Trustee has one remaining basis to support his contention that ANB's claim should be disallowed. Until Count I is resolved, this Court will not decide whether there is any basis for disallowing ANB's claim.

**Conclusion**

For the reasons set forth above, the Motion of American National Bank to Dismiss Counts I and V is denied without prejudice, but is granted with respect to Counts II, III and IV.

7. In Count III the Trustee alleges that two payments totaling $225,000 are avoidable under § 548(a)(2) and in Count IV the Trustee alleges that those same two payments, plus two additional payments (the four payments total $285,000) are constructively fraudulent under Illinois law. Again, because the requirements under § 548 and the Illinois Fraudulent Transfer Act are the same this Court will deal with both Counts simultaneously.

The two additional payments set forth in Count IV were made more than one year before the petition date and are, therefore, outside of the reach back period of § 548. One of the four payments was made on October 10, 1990, in the amount of $10,000. This transfer is also outside of the four year reach back period of the Illinois Fraudulent Conveyance Act. 740 ILCS § 10.

8. ANB also argues that the transfers are not avoidable under § 548(c) as they received "value" for the transfer and acted in "good faith". Section 548(c) provides an affirmative defense that, considering ANB has not filed an answer, is not properly before this Court on a motion under Rule 12(b)(6). *See M & L Business Mach., supra*, 155 B.R. at 541 n 22. Accordingly, it is not necessary for this Court to address the points raised by the Trustee in its Surreply concerning issues of fact under § 548(c).