In re HEILIG–MEYERS COMPANY, et al Chapter 11 Debtors–in– Possession.

Official Committee of Unsecured Creditors of Heilig–Meyers Company, et al, on Behalf of Heilig–Meyers Company, et al, Plaintiff,

v.

Wachovia Bank, N.A., f/k/a First Union National Bank and as successor by merger to Wachovia Bank, N.A., both as agent and individually; Wachovia Securities, Inc., f/k/a Wachovia Capital Markets, Inc.; Bank of America, N.A.; Crestar Bank; Suntrust Bank; the Fuji Bank, Limited; First Chicago, f/k/a The First National Bank of Chicago; Credit Lyonnais, New York Branch; the Bank of Tokyo–Mitsubishi, Ltd.; MLO CLO XIX Sterling (Cayman) Ltd.; PNC Bank, National Association; Prudential Insurance Company of America; Pruco Life Insurance Company; Doe Wachovia Certificate Holders Nos. 1–1,000; and Doe Funb Certificate Holders Nos. 1–1,000, Defendants.

Bankruptcy Nos. 00–34533–T to 00–34538–T.

Adversary No. 02–06158–T.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

March 25, 2003.

Bruce H. Matson, LeClair Ryan, P.C., Richmond, VA, for plaintiff.

Lynn L. Tavenner, for Special Local Counsel for Official Committee of Unsecured Creditors.

Scott L. Baena, for Special Counsel for Official Committee of Unsecured Creditors.

Kevin R. Huennekens, for Wachovia Bank, N.A.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

Hearing was held December 18, 2002, on the joint motion of the defendant pre-petition secured lenders (filed by Wachovia Bank, N.A., as collateral agent for each of the pre-petition lenders as defined in the joint motion) to dismiss portions of the amended complaint of the plaintiff official committee of unsecured creditors. The court took ruling on the motion under advisement and requested the parties to submit proposed orders for entry by the court. In reaching a decision, the court has considered the argument at hearing, the various memoranda submitted by the parties and their proposed orders.

Three issues remain for resolution under the dismissal motion: 1) Dismissal of Counts I and III of the amended complaint (the Berrios proceeds issue), 2) Dismissal of Counts III and IV (reasonably equivalent value issue), and 3) Dismissal as to four members of defendant bank group, incorrectly identified in original complaint.

For reasons stated below, the motion to dismiss will be granted as to the allegations of Count IV of the amended complaint (11 U.S.C. § 548, reasonably equivalent value of transfers of assets for liens). The motion will be denied as to all other allegations.

*Underlying Legal Standard.*

Federal Rule of Civil Procedure 8(a)(2) states that a claim for relief in a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." *See* 1 Moore's Manual: Federal Practice and Procedure, §§ 9.10[2][a], 10.06[1]-[2] (James W. Moore, et al. eds., 2002). The Supreme Court has recently referred to the standard of pleading as one of "simplified notice . . .;" a plaintiff must give the defendant "fair notice of the basis" for the claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Defendants move to dismiss Counts I, III and IV of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure of these counts to state a claim for relief.[1] In analyzing a 12(b)(6) motion to dismiss, the court reviews the face of the amended complaint to determine whether all of the required elements of the particular claim are adequately pled, and in this context all factual allegations in the complaint are accepted as true. *See Estate Constr. Co. v. Miller & Smith Holding Co. Inc.*, 14 F.3d 213, 217–18 (4th Cir.1994). A 12(b)(6) motion should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz*, 534 U.S. at 507, 122 S.Ct. 992; *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999) ("... a Rule 12(b)(6) motion should only be granted if ... it appears certain that plaintiff cannot prove any set of facts in support of his claim entitling him to relief.").

Conversely, a count in a complaint should be dismissed if it appears that the plaintiff would be entitled to no relief under the facts alleged in support of its claim. *See Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir.1982). And the court is not required to accept allegations contradicted by documents attached to the amended complaint. *See, e.g., Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir.2002); *Jeffrey M. Brown Assocs. v. Rockville Ctr., Inc.*, 7 Fed.Appx. 197, 202 (4th Cir. Apr.3, 2001).

The parties are agreed on these general principles of pleading. They disagree on application of the principles to the allegations at issue.

*The Berrios Proceeds—Counts I and III.*

 In Counts I and III of the amended complaint, respectively, plaintiff committee seeks to avoid cash transfers as preferences (11 U.S.C. § 547) and fraudulent transfers (11 U.S.C. § 548). Nearly $100,000,000.00 of the alleged cash transfers, the Berrios Proceeds, originated from two non-debtor subsidiaries of Heilig–Meyers Company. Paragraphs 36 and 37 of the complaint allege that the Berrios Proceeds constituted property of the debtors at the time of the avoidable cash transfers.

The court finds, and the parties do not seriously dispute, that for purposes of Counts I and III of the complaint, paragraphs 36 and 37 adequately allege that Berrios proceeds "were property of the debtors." Where the parties differ is on defendants' further argument that the Berrios proceeds counts should be dismissed because exhibits attached to the amended complaint contradict plaintiff's allegations that any of the debtors held a property interest in the Berrios funds that could give rise to either a preference or fraudulent conveyance.

---

1. Rule 12(b)(6) is incorporated in the bankruptcy rules by Federal Rule of Bankruptcy Procedure 7012.

Stated briefly, the parties' positions on this issue are as follows:

DEFENDANTS

The exhibits fail to demonstrate that the Debtors had a sufficient property interest in the Berrios Proceeds to sustain either a preference or a fraudulent transfer claim. Rather, they confirm that the Debtors had no such interest. According to the exhibits referred to by the Committee, the Berrios Proceeds funded the Escrow Account, which is defined in Exhibit A of the Amended Complaint (the Intercreditor and Sharing Agreement) as the "Non–Operating Cash Escrow Account." However, according to the very same exhibits, it appears that the Escrow Account was administered at all times by the Collateral Agent, who exercises "sole dominion and control over, and shall possess all right, title and interest in and to all funds on deposit." (Am. Compl., Ex. A at 5.) The Berrios Proceeds are "collectively, the assets and business operations of HMPR ... and MacManufacturing," both of which are non-debtors. (Am. Compl., Ex. A at 2.)

Joint Mem. of Law In Supp. of Pre–Petition Secured Lenders' Mot. to Dismiss Am. Compl., at 21.

PLAINTIFF

... with respect to defendants' argument that the May 25, 2000 Documents belie the allegation that the Debtors owned the Berrios Proceeds at the time of the transfer, the Committee submits that the documents establish just the opposite. Pursuant to the express terms of the Assignment of Non–Operating Cash Escrow Account (Exhibit F to the Amended Complaint), the demand deposit account that became the Non–Operating Cash Escrow Account was already in existence at the time of the execution of the May 25, 2000 Docu-

ments and was owned by MacSaver. In fact, the Assignment specifically refers to the account number of MacSaver's demand deposit account, and provides for the grant by MacSaver of a security interest in the account. (Am.Compl., Ex. F, ¶ 2.1(a)). Moreover, the Intercreditor and Sharing Agreement confirms that at least $88 million of the Berrios Proceeds had already been received by the Debtors (and held on deposit in the MacSaver demand deposit account) prior to the execution of the May 25, 2000 Documents, and expressly obligated the Debtors "to [thereafter] deliver such additional Berrios Proceeds to the Collateral Agent as and when received." (Am.Compl., Ex. A, ¶ 4).

Response to Joint Mem. of Law in Supp. of Pre–Petition Secured Lenders' Mot. to Dismiss Am. Compl., at 10.

The court will deny defendants' motion to dismiss the Berrios Proceeds counts of the amended complaint. I agree with the plaintiff that the May 25, 2000, documents do not contradict the allegation that the Berrios Proceeds were property of the debtors as of the May 25, 2000, transfer date. It may be true that at trial the exhibits will be subject to different interpretation. However, the security agreement attached as exhibit B to the complaint contains an express representation and warranty that each of the debtors "is the legal and beneficial owner of, and has good and valid rights in and marketable title to, the Collateral held by it ...." Am. Compl., Ex. B, at 5. The definition of collateral in the security agreement includes, "all financial assets on deposit in or credited to ... the Non–Operating Escrow Account, including without limitation, cash and cash equivalents." *Id.* The parties agree, consistent with other provisions of the May 25, 2000, documents, that the escrow account contained at least

$88,000,000.00 of the Berrios Proceeds (see, for instance, Defs.' Mot. To Dismiss, at 24). Thus the representation and warranty noted above is consistent with the allegation that the debtors owned the Berrios Proceeds on the date of the transfer (May 25, 2000).

Moreover, the language of the assignment of escrow account (exhibit F to the amended complaint), reflects that the demand deposit account that became the escrow account was already in existence at the time of execution of the May 25, 2000, documents and was owned by debtor MacSaver Financial Services, Inc. Am Compl., Ex. F. Specifically, the assignment refers to the account number of MacSaver's demand deposit account and provides for the grant by MacSaver of a security interest in the account. Am. Compl., Ex. F, ¶ 2.1(a).

Finally, the Intercreditor and Sharing Agreement confirms that at least $88,000,000.00 of the Berrios Proceeds had already been received by the debtors (and held on deposit in the MacSaver demand deposit account) prior to the execution of the May 25, 2000, documents, and expressly obligated the debtors "to [thereafter] deliver such additional Berrios Proceeds to the Collateral Agent as and when received." Am. Compl., Ex. A, ¶ 4.

These examples establish that the May 25, 2000, documents are consistent, or at the very least not inconsistent, with the allegation that the debtors owned the Berrios Proceeds as of the relevant transfer date. This conclusion is not altered by defendants' last argument with respect to the Berrios Proceeds—that even if the debtors did hold "legal" title to the Berrios Proceeds, all "equitable" title to the proceeds was transferred to defendants when the debtors transferred control over the escrow account to the defendants pursuant to the May 25, 2000, documents. Even assuming defendants' characterization of

the transfer, there still is no inconsistency between the documents and either the preferential or fraudulent transfer claims asserted in Counts I and III of the amended complaint. To the contrary, whether the transfer at issue is deemed to be the transfer of the Berrios Proceeds or the transfer of the bank account in which the proceeds were held, the May 25, 2000, documents on their face appear to reflect that the transfer occurred on or after May 25, 2000, within the preference period.

In conclusion, the court finds that for purposes of a dismissal motion, the allegations that debtors owned the Berrios Proceeds at the time of the transfer must be accepted as true. Accordingly, defendants' motion to dismiss Counts I and III of the amended complaint based on defendants' argument that the debtors did not own the Berrios Proceeds at the time of the transfer will be denied.

### *Reasonably Equivalent Value— Counts III and IV.*

Counts III and IV are based upon factual allegations of several paragraphs of the amended complaint. Paragraph 36 alleges in substance that under the refinancing transaction of May 25, 2000, debtors made cash transfers to defendants of approximately $140,000,000.00 toward debtors' pre-petition indebtedness to defendants. Paragraph 38 alleges that under the transaction of May 25, 2000, debtors granted liens and security interests to defendants, "purportedly to secure" debtors' obligations to defendants under pre-petition indebtedness. Paragraphs 62 and 67 of the amended complaint, respectively, allege that debtors did not receive reasonably equivalent value from the cash transfers alleged in paragraph 37 or from the lien transfers alleged in paragraph 38. Based on these allegations, plaintiff alleges in Counts III (cash transfers) and IV (lien

transfers) that these transfers are avoidable constructively fraudulent transfers under § 548(a)(1)(B).

Defendants move to dismiss these counts on the ground that the factual allegations of paragraphs 62 and 67 are inadequate.[2] Defendants argue that under applicable case law, when a debtor seeks to avoid transfers of cash or grants of liens to a creditor in respect of antecedent debt, the avoidance complaint must also allege why the transfers did not constitute reasonably equivalent value. Plaintiff asserts that the allegations are sufficient at this stage of the case.

As indicated, the parties' argument on this issue centers around case law concerning cash transfers in satisfaction of antecedent debt and lien transfers that collateralize antecedent debt. Their argument, while enlightening, tends to obscure what the court must decide, i.e., the sufficiency of the allegations of the amended complaint. On this point, there is but little guidance to be found in the cases.

The starting point on the issue is the following definition of value in § 548(d)(2)(A):

> "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor;

11 U.S.C. § 548(d)(2)(A). Many cases have addressed "reasonably equivalent value" of transfers toward antecedent debt, and the parties here differ on how, in this context, the case law should impact the pleading of a § 548 claim.

COUNT III.

Plaintiff alleges debtors paid defendants approximately $140,000,000.00 toward antecedent indebtedness and further that debtors did not receive reasonably equivalent value for the payments. On brief plaintiff asserts that debtors did not receive a dollar for dollar reduction of debt for payment. Plaintiff's argument is that the allegation that debtors did not receive reasonably equivalent value is a sufficient allegation that debtors did not receive a dollar-for-dollar reduction of debt.

Defendants argue that the proper measure of a cash payment of an antecedent debt under § 548 is whether the debtor received reasonably equivalent value and not exactly equal value. The cases cited by defendants illustrate under different factual scenarios that reasonably equivalent value in exchange for payment of antecedent debt does not always require a dollar-for-dollar exchange. *See Butler Aviation Int'l. Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1125–26 (5th Cir.1993).

However, in the context of a cash payment toward debt of the kind debtors owed defendants, it stands to reason that the value received by debtors should have been a reduction of the debt in approximately, if not exactly, the same amount. This expectation is supported by cases holding that reasonably equivalent value

---

**2.** Defendants have not argued that allegations of constructive fraud under § 548(a)(1)(B) must comply with the requirement of Federal Rule of Civil Procedure 9(b) that fraud be pled with particularity. While there is some support for this argument, see *Miner v. Bay Bank & Trust Co. (In re Miner)*, 185 B.R. 362, 367 (N.D.Fla.1995), the court finds the better view is that it is sufficient for a plaintiff to plead the elements of constructive fraud set out in the statute. *See Ames Dep't Stores, Inc.* *v. Wertheim Schroder & Co., Inc. (In re Ames Dep't Stores, Inc.)*, 161 B.R. 87, 89 (Bankr. S.D.N.Y.1993); *see also Brandt v. Am. Nat'l Bank & Trust Co. of Chi. (In re Foos)*, 188 B.R. 239, 244 (Bankr.N.D.Ill.1995), rev'd on other grounds, No. 96–C–3982, 1996 WL 563503, 1996 U.S. Dist. LEXIS, 14507 (N.D.Ill. Sept.19, 1996); *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 504–505 (N.D.Ill.1988).

was received when there was a dollar-for-dollar exchange. For example, see *Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 595 (9th Cir. 1991) (finding that Ponzi scheme investors received reasonably equivalent value to extent of payments received from scheme organizer; investors' rights to restitution "were proportionately reduced by the power payments they received"); *Solow v. Reinhardt (In re First Commercial Mgmt. Group. Inc.)*, 279 B.R. 230, 239 (Bankr. N.D.Ill.2002) (holding that debtor received reasonably equivalent value by paying broker's commissions); *Christie v. First State Bank of Stratford, B.A. (In re Keener)*, 268 B.R. 912, 921 (Bankr.N.D.Tex.2001) (holding that debtor received reasonably equivalent value upon foreclosure of debtor's realty when foreclosure trustee applied excess sales proceeds after payment of secured loan to unsecured claim against debtor); *Brandt v. Am. Nat'l Bank & Trust Co. of Chi. (In re Foos)*, 188 B.R. 239, 245 (Bankr.N.D.Ill.1995), *rev'd on other grounds*, No. 96–C–3982, 1996 WL 563503, 1996 U.S. Dist. LEXIS, 14507 (N.D.Ill. Sept.19, 1996) (holding that Rule 12(b)(6) motion granted as to allegations of complaint that loan payments did not constitute reasonably equivalent value; court found that the payments had reduced the antecedent debt on a dollar for dollar basis); *Marshack v. Wells Fargo Bank (In re Walters)*, 163 B.R. 575, 581 (Bankr. C.D.Cal.1994) (finding that a dollar-for-dollar reduction of antecedent debt was reasonably equivalent value).

■ No case found by the court stands for the proposition that there is never a dollar-for-dollar requirement or that a cash payment on debt need not receive a credit in the same amount. The court does not accept defendants' broad assertion that reduction of antecedent debt is reasonably equivalent value as a matter of

law. Rather, reasonably equivalent value is a case by case issue of fact that depends upon the circumstances of the transfer. *See Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., (In re Ames Dep't Stores, Inc.)*, 161 B.R. 87, 90 (Bankr.S.D.N.Y.1993) (denying summary judgment to plaintiff who had paid debtor 97.875 cents on the dollar for debentures; whether the payment was reasonably equivalent value is a factual issue for trial); *cf. In re Foos*, 188 B.R. at 245 (holding that a dollar-for-dollar debt payment can be reasonably equivalent value as a matter of law; Rule 12(b)(6) motion granted).

COUNT IV.

Plaintiff alleges that debtors gave defendants liens and security interests in previously unencumbered assets to secure debtors' indebtedness, for which debtors did not receive reasonably equivalent value. Plaintiff's memorandum in opposition to the motion to dismiss states that debtors granted defendants in excess of $120,000,000.00 in liens and security interests in respect of previously unsecured debt.

Again, defendants rely on case law to argue for dismissal because plaintiff has failed to allege why debtors did not receive reasonably equivalent value in granting liens to secure antecedent debt.

The parties cite several of the same decisions, including, notably, *Anand v. Nat'l Republic Bank of Chi. (In re Anand)*, 210 B.R. 456 (Bankr.N.D.Ill.1997), *aff'd*, 239 B.R. 511 (N.D.Ill.1999). In *Anand*, debtor had transferred a real property interest as collateral for an antecedent debt and brought a § 548(a)(2) complaint to avoid the transfer as constructively fraudulent. The bankruptcy court held that "as a matter of law collateralizing an antecedent debt cannot constitute less than reasonably equivalent value

regardless of the value of the collateral." *Id.* at 459.[3] On appeal the district court upheld the bankruptcy court's ruling based upon the facts of the case. The district court, while noting that the bankruptcy court's "reasoning is persuasive," found no authority for the lower court's per se rule and held that a per se rule on the issue would be in conflict with 7th Circuit precedent that reasonably equivalent value "requires fact-specific case-by-case analysis." *Anand v. Nat'l Republic Bank of Chi. (In re Anand)*, 239 B.R. 511, 517–18 (N.D.Ill. 1999).

See also *In re Kaplan Breslaw Ash. L.L.C.*, 264 B.R. 309 (Bankr.S.D.N.Y.2001). This case involved a mortgagee's motion for relief from stay in which the debtor raised as a defense that the mortgage transfer was a fraudulent conveyance. The court rejected the debtor's defense because the mortgage had been given to secure antecedent debt. The opinion approves the rationale of the per se rule adopted by the bankruptcy court in *In re Anand. See In re Kaplan*, 264 B.R. at 329–30, n. 69.

The parties have cited one case in which a grant of a security interest was held not to be reasonably equivalent value. *See Koch v. Rogers (In re Broumas)*, 203 B.R. 385 (D.Md.1996), *aff'd in part rev'd in part*, No. 97–1182, 1998 WL 77842, 1998 U.S.App. LEXIS, 3070 (4th Cir. Feb. 24, 1998) (unpublished). Debtor gave an attorney a deed of trust in realty to secure a $50,000.00 flat fee charged by the attorney for representing debtor in litigation. Debtor's chapter 7 trustee sought to avoid this transfer as constructively fraudulent. The court of appeals affirmed the lower courts' avoidance of the transfer, which had been based on the finding that the attorney's services were not worth $50,000.00 and therefore were not reasonably equivalent value for the transfer.

CONCLUSION

How do these principals of law regarding cash and lien transfers transpose to the pleading issue at hand? Rule 8(a) requires the complaint to contain "a short and plain statement of the claim . . . ." The pleading standard is "simplified notice" that gives a defendant "fair notice of the basis" for the claim. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 507, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

The test in a 12(b)(6) motion does not require a showing of the probability of prevailing. Rule 12(b)(6) tests only the sufficiency of the civil complaint and requires a showing that, with all inferences drawn in favor of the plaintiff, the plaintiff cannot prove facts necessary to warrant the requested relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir.1999).

Here, the amended complaint pleads the element of § 548(a)(1)(B)(i) by stating sim-

---

**3.** The bankruptcy court, judge Barliant, did not cite his previous similar ruling in *In re Foos*, 188 B.R. at 244. Judge Barliant, in *Anand*, disagreed with authority holding that the issue raised a question of fact and explained the rationale for his ruling as follows:

It is obvious that when dealing with the exchange of one asset for another, the court must compare the value of what the debtor surrendered with what the debtor received. *Bundles v. Baker (In re Bundles)*, 856 F.2d 815, 824 (7th Cir.1988). But here the Debtor did not give up all of his interest in the Mokena property; he only gave the bank an interest in that property sufficient to secure payment of his debts. The difference is critical.

A secured creditor does not own the collateral securing a debt; the creditor has no rights in the collateral except as necessary to protect the claim. . . . A secured creditor is not entitled to collect more than the amount of the debt from . . . a liquidation of the collateral. Any collateral value in excess of the debt is available to satisfy other creditors. *In re Anand*, 210 B.R. at 458–59.

ply that the transfers of cash and liens under the § 548 allegations of Counts III and IV were for less than reasonably equivalent value. At first blush, these allegations of fact seem to comply with the liberal notice pleading requirement of Rule 8(a). Defendants' motion to dismiss, however, treats the issue as primarily one of law, which they assert requires an allegation in the pleading to overcome legal principles found in the cases.

■ The allegations on the cash transfers (Count III) give notice to defendants that debtors transferred cash to defendants in payment of antecedent debt but received less than reasonably equivalent value, i.e., received less than proper credit toward the debt. As discussed above, the case law on cash transfers supports a conclusion that debtors should have received credit on something close to a dollar-for-dollar basis. Whether the payments were reasonably equivalent value is an issue of fact to be determined under the circumstances of the transfers. The factual basis for the allegations can be developed during discovery and if necessary presented at trial. Accordingly, the court finds that the allegations of Count III comply with the notice pleading requirement of Rule 8(a), and the 12(b)(6) motion will be denied on this count.

■ The lien transfers under Count IV are more problematical. Most of the cited cases that have considered transfers of liens for antecedent debt did not involve factual issues, and these decisions suggest that lien transfers will ordinarily be for reasonably equivalent value. I agree, although this should not mean that there will never be a factual issue over a lien transfer. As noted by the bankruptcy court in *Anand*, in any constructive fraud case under § 548, the court must always compare what the debtor transferred with what the debtor received. *In re Anand*, 210 B.R. at

458–59. Nevertheless, after reviewing the case law, the court must wonder why debtors did not receive reasonably equivalent value in granting defendants liens on previously unencumbered assets.

The court has found two cases that bear on defendants' position that plaintiff's lien transfer allegations are inadequate.

In *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 505–06 (N.D.Ill.1988), the court considered a 12(b)(6) motion to dismiss a § 548 complaint, including allegations that lien transfers in respect of antecedent debt did not constitute reasonably equivalent value. The dismissal motion was denied as to these allegations. Although the allegations in question are not set out in the opinion, it is apparent from the court's decision that the allegations were much more revealing than those in the present complaint.

*Miner v. Bay Bank & Trust Co. (In re Miner)*, 185 B.R. 362, 367 (N.D.Fla.1995), involved a plaintiff's attempt to set aside a state court foreclosure sale of realty as constructively fraudulent. The plaintiff was thus confronted with the Supreme Court's decision in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), which held that reasonably equivalent value of foreclosed property is the price received at foreclosure provided all requirements of state law are met. To overcome this holding, the plaintiff alleged in his complaint that "there was collusion between the defendant and another party ... so that said sale is not conclusive as to fair value." *In re Miner*, 185 B.R. at 367. On defendant's 12(b)(6) motion to dismiss, the district court affirmed the ruling of the bankruptcy court granting dismissal. The district court invoked the heightened pleading requirements for allegations of fraud under Federal Rule 9(b) to find that the "bald statement" of collusion in the complaint

failed to state the necessary "particularity." 185 B.R. at 367.[4]

As to Count IV, defendants' motion requires a close call. The issue is not just one of fact, as in Count III, but also implicates a general principle derived from the cases that a transfer of assets for liens will ordinarily be reasonably equivalent. The court declines to assume that Count IV of the amended complaint presents a purely factual assertion regarding the value of the transfers, and I am therefore unable to tell how plaintiff expects to prevail. The case law raises an obstacle to recovery that begs to be addressed even under the notice pleading standards. Because the court finds the pleading is deficient in this respect, the motion to dismiss Count IV will be granted.

### Dismissal of Bank Defendants Incorrectly Named in Original Complaint.

■ Finally, defendants seek to dismiss as defendants four members of the Bank Group[5] that, as a result of various mergers or acquisitions, no longer exist under the names by which they were sued in the original complaint.[6] According to their memorandum in support of the motion to dismiss portions of the amended complaint, the four defendants that should be dismissed are Mizuho Holdings, Mizuho Bank, Bank One and Highland Capital. Defendants argue that because the amended complaint's correction of these four defendants was accomplished after the passage of the applicable statute of limitations, the claims against these four defendants are time-barred.[7] The court finds that both under the express language of Federal Rule of Civil Procedure 15(c)(3), as incorporated by Federal Rule of Bankruptcy Procedure 7015, and applicable case law, the amendments should be allowed correcting the identification of the four members of the Bank Group to relate back to the date of the filing of the original complaint.

Specifically, Rule 15(c)(3) provides that an amendment to a pleading relates back to the date of the original pleading when:

> the amendment changes the party or the naming of the party against whom a claim is asserted if . . ., within the [120 day] period provided by Rule 4(m) for service of the summons and complaint,

---

4. As noted previously, see note 2, *infra,* this court does not apply Rule 9(b) here. Nevertheless, the *Miner* decision tends to support defendants' position.

5. The Court adopts the definition of "Bank Group" used in the amended complaint.

6. Defendants explained in the motion to dismiss the original complaint that Suntrust Bank is the successor to defendant Crestar Bank, that Mizuho Financial Group is the successor to defendant Fuji Bank, that Bank One is the successor to defendant First National Bank of Chicago, and that Highland Capital Management, L.P. is the successor to defendant MLO CLO XIX Sterling (Cayman), Ltd. Upon learning this information, plaintiffs promptly filed the amended complaint correcting the names of the four misidentified defendants.

7. Defendants also argue in the motion that plaintiffs should have filed a motion seeking leave to amend before amending the complaint to correct the names of the four misidentified defendants. Since no responsive *pleading* had yet been filed in response to the complaint at the time plaintiffs filed their amended complaint, this contention is incorrect. *See* Fed.R.Civ.P. 15(a) ("a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."); *Leonard v. Parry,* 219 F.3d 25, 30 (1st Cir.2000) (explaining that where no answer has yet been filed, a motion for leave to amend complaint need not be filed before plaintiff can amend complaint to substitute incorrectly named defendant with correct defendant).

the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(3).

In this case, each of the requirements for relation back has been met. It is undisputed that the four members of the Bank Group at issue received the required notice within the applicable 120–day period, and understood that, but for a mistake concerning their identity, they would have been named as defendants in the original complaint. Indeed, it was these defendants—specifically listed as parties to the original motion to dismiss—who brought the mistake to plaintiffs' and the court's attention in their motion to dismiss. Moreover, as discussed above, plaintiffs promptly filed and served their amended complaint on these defendants well within the 120–day period for service of process.

Additionally, Rule 15(c)(3) allows relation back to correct misidentifications similar to the ones at issue here. As 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane explain:

> Identity of interest ... has been found between past and present forms of the same enterprise. This typically occurs when plaintiff is unaware of a corporate merger or dissolution and names the nonexistent entity rather than the one actively conducting the business. Since plaintiff's intentions clearly were to sue the existing corporation, an amendment correcting the misnomer will relate back [under Rule 15(c)(3) ] as long as the intended defendant received notice.

6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1499, at 150 (2d ed.1990); *see, e.g., Ringrose v. Engelberg Huller Co.,* 692 F.2d 403, 405 (6th Cir.1982) (reversing and remanding to determine whether corporate successors had notice during relevant period; if so, the successors could be named as defendants pursuant to Rule 15(c)(3) although statute of limitations had expired); *Miles v. Whaley,* 155 F.R.D. 684, 685–86 (M.D.Ala.1994) (allowing amendment pursuant to Rule 15(c)(3) to correct misidentification of defendant, where corporation originally named as defendant no longer existed and amendment corrected complaint by naming the sole proprietorship that was the successor to the dissolved corporation).

Defendants' basis for arguing against the amendment correcting the identification of the four members of the Bank Group is the Fourth Circuit's decision in *Rennie v. Omniflight Helicopters, Inc.,* No. 97–1524, 1998 WL 743678, 1998 U.S.App. LEXIS, 27050 (4th Cir. Oct. 23, 1998). *Rennie,* however, is distinguishable from this case. In *Rennie,* the plaintiffs named as a defendant the company they believed to be the successor to the real party in interest. *Id.* at *1–2, 1998 U.S.App. LEXIS 27050, at *2–3, *5. As it turned out, the plaintiffs' assumption proved to be incorrect: the named defendant in fact had not acquired the "actual defendant." *Id.* at *1–2, 1998 U.S.App. LEXIS 27050, at *4–5. Unlike this case where the four members of the Bank Group purportedly no longer exist by the names under which they were originally sued, the "actual defendant" and the corporation sued by plaintiffs in *Rennie* continued to exist as separate and independent entities. *Id.* at *, 1998 U.S.App. LEXIS 27050, at *6–7.

*Rennie* demonstrates that a plaintiff cannot assume that another party has succeeded an entity with which it has dealt.

*Id.* If it turns out, as was the case in *Rennie*, that the succession did not occur and the "real defendant" continues to exist as a separate and independent entity, then the plaintiff cannot claim a mistake of identification but instead is responsible for simply having chosen to sue the wrong party. *Id.* at *2, 1998 U.S.App. LEXIS 27050, at *7.

By contrast, in this case, plaintiffs did not sue the "wrong parties." Instead, they named as defendants in the original complaint the very members of the Bank Group who were identified in and executed the May 25, 2000, documents on which this lawsuit is based. When defendants disclosed that four members of the Bank Group had ceased to exist under their previous identities as a result of corporate reorganizations, plaintiffs promptly amended the complaint to correct the identification of these four defendants. These facts do not invoke the Fourth Circuit's holding in *Rennie*.

For all of these reasons, defendants' motion to dismiss the amended complaint as to these four defendants will be denied.

*Summary.*

A separate order will be entered granting defendants' motion to dismiss Count IV of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and denying defendants' dismissal motion as to all other allegations of the amended complaint.